# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PHILIP WALSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-CV-00841-SPM |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Philip Walsh ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because the Court finds the decision denying benefits was supported by substantial evidence, the Court will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

.

## I. FACTUAL BACKGROUND

At the most recent hearing before the ALJ, Plaintiff and his representative communicated that, during the relevant period, Plaintiff suffered from mental health symptoms such as mania, depression, irritability, sleeplessness, paranoia, and hallucinations. (Tr. 1136-37, 1143-44). As a result, Plaintiff testified that he had difficulty concentrating and interacting with others, lived in constant fear, and walked around "like a zombie." (Tr. 1137). According to Plaintiff, he sought treatment at Comtrea and was prescribed medications, but nonetheless he struggled to function and to maintain willpower for activities. (Tr. 1137-38).

Plaintiff performed household chores such as laundry, cooking, cleaning, and caring for his school-age son, with occasional assistance from his sister and mother. (Tr. 1139-43). Plaintiff testified that once or twice a month, when he was experiencing hallucinations, his son would spend a few days with Plaintiff's mother or sister. (Tr. 1143). Plaintiff also regularly attended Alcoholics Anonymous ("AA") meetings and church. (Tr. 1139).

The record contains documentation of Plaintiff's treatment for mental health conditions, primarily bipolar disorder and anxiety, since at least 2018. Plaintiff has been treated with counseling and various medications. For the relevant period, the record contains opinion evidence from Keith Allen, PhD, an agency consultant, who opined that Plaintiff has some limitations in activities of daily living and social functioning, and that Plaintiff had the mental capacity to carry out "two-step commands" and would work best in a setting where there is "little need for direct supervision or frequent interaction with the public." (Tr. 505-06).

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## II.  PROCEDURAL BACKGROUND

On August 28, 2018, Plaintiff applied for SSI, alleging that he had been unable to work since January 11, 2011 due to bipolar disorder type I disorder, schizoaffective disorder, and anxiety. (Tr. 584, 595). On November 14, 2019, Plaintiff amended his alleged onset date to August 28, 2025, his application date. (Tr. 615). His application was denied initially and on reconsideration, and he filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 516-541). After the ALJ denied his claim, he appealed to this court, which remanded his case. (Tr. 1156-1189, 1214). On remand, Plaintiff filed another application and was found disabled with an established onset date of February 23, 2021. (Tr. 1200, 1208).

On November 16, 2023, a hearing took place for consideration of whether Plaintiff was disabled during the period from his initial application date, August 28, 2018, through February 22, 2021—in other words, the gap between his initial application and his subsequent application (Tr. 524-26). After a hearing, the ALJ issued an unfavorable decision on February 23, 2024. (Tr. 1108-1122). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III.  STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The

3

impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

### IV.   THE ALJ'S DECISION

The adjudicative period for the ALJ's consideration was August 28, 2018 through February 22, 2021. Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since August 28, 2018, the application date; that Plaintiff had the severe impairments of bipolar type I disorder and generalized anxiety; and that Plaintiff

5

did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 1114-16). The ALJ found that Plaintiff had the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations. He was able to complete simple, routine tasks with minimal changes in job duties and setting. He must have avoided fast-paced production work, for example avoiding hourly quotas. He could have occasional interaction with supervisors, coworkers and the general public.

(Tr. 1116).

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," nonetheless "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 1117). First, the ALJ found that Plaintiff "described daily activities and exhibited behavior" was "inconsistent with his allegations of completely disabling symptoms and limitations." (*Id.*). For example, despite Plaintiff's representations that his lack of sleep, mania, and hallucinations left him "walking around like a zombie and in a constant state of fear," the ALJ noted that Plaintiff was able to work out twice weekly at a gym, care for a pet dog and for his school-age son, drive to run errands, attend AA meetings twice weekly, and perform household chores. (Tr. 1117).

As further support for her RFC determination, the ALJ noted that Plaintiff's allegations of disability were "not entirely in line with the objective medical evidence" and with his statements to providers at various points in his medical treatment. (Tr. 1117). The ALJ observed that "abnormalities" in some examination findings stood in contrast to "the vast majority of items [being] routinely unremarkable," such as "appropriate mood, sleep, thought process and content, grooming, dress, speech, affect, orientation, concentration, and judgment, and no memory deficits,

6

hallucinations, delusions, or reported phobias" during 2020 appointments. (Tr. 1118). Furthermore, although the ALJ acknowledged Plaintiff's diagnoses of bipolar I disorder and generalized anxiety with prescribed medication such as Seroquel XR, Lexapro, Vistaril, and Klonopin, she noted that with treatment and at his appointments, he generally presented as "pleasant and cooperative" and reported "doing pretty good" with either limited or improving mental health symptoms until February 2021. (*Id.*) The ALJ further observed "the lack of intensive or emergency treatment required for the exacerbation of mental health symptoms" during the relevant period. (Tr. 1120).

The ALJ also considered the medical opinions in the record for the relevant time period. She found the prior administrative findings of state agency consultant Keith Allen, Ph.D. to be "mostly persuasive" with respect to Plaintiff's limitations because they were "supported by Dr. Allen's own analysis of the evidence" and generally "consistent with the record as a whole," including treatment notes. (Tr. 1118-19). However, the ALJ found some of Dr. Allen's suggested limitations to be not persuasive because they were "too vague to be useful," such as that Plaintiff should be limited to "two-step commands," which the ALJ noted is "not a proper vocational term." For similar reasons, the ALJ found unpersuasive Dr. Allen's suggestion that Plaintiff's interpersonal interactions be limited to having "'little need' for direct supervision," as opposed to a more general limitation of occasional contact with others due to Plaintiff's history of paranoid thoughts and professed urge to punch people. (Tr. 1119).

Relying on a vocational expert's testimony regarding a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience), the ALJ found that Plaintiff was unable to perform any past work during the relevant period because the demands of Plaintiff's past work as a Nurse Assistant and a Certified Medical Technician exceeded the limitations of

7

Plaintiff's RFC. (Tr. 1120). However, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including sweeper, wall cleaner, and floor waxer. (*Id.*). Thus, the ALJ concluded that Plaintiff was not under a disability from August 28, 20218 through February 22, 2021. (Tr. 1121).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ erred in finding that Plaintiff had no severe physical impairments; and (2) the RFC is not supported by substantial evidence.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that

8

decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004)); *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

### B. Severe Impairments

Plaintiff's first argument is the ALJ erred in failing to find Plaintiff's physical impairments severe.

As explained above, at Step Two, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment," or "a combination of impairments that is severe," that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. § 416.909; 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

9

While the requirement of severity is "not a toothless standard," it is also not an "onerous requirement." *Kirby*, 500 F.3d at 707. Additionally, though it is Plaintiff's burden to prove the existence of severe impairments, "the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Id.* (quoting *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir.1996)). Further, the ALJ may not "pick and choose only evidence in the record buttressing his conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004).

Here, Plaintiff argues that the medical record supports a finding that his low back pain with radiating leg pain/radiculopathy, knee pain, and left arm pain are severe and warrant exertional limitations. The Court first notes that Plaintiff failed to allege physical conditions limited his ability to work in Disability Reports filed in 2018. (Tr. 633, 634). Furthermore, Plaintiff and/or his representative did not bring physical impairments to the ALJ's attention—at least as a basis for disability—during either of the hearings pertaining to the relevant period. (Tr. 447-65, 1130-55). Indeed, at the most recent hearing, Plaintiff's representative said that during the relevant period, it was "primarily [Plaintiff's] mental conditions that have affected his ability to work," and when the ALJ asked whether Plaintiff had "any other problems" during the relevant period that he wanted to discuss besides his mental impairments, Plaintiff responded, "No, that's it." (Tr. 1142). The Eighth Circuit has held that an ALJ is only obligated to investigate a claim that is presented at the time of the application for benefits, or offered at the hearing as a basis for disability. *See Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (The ALJ is not obligated "to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for

10

disability.") (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); *see also* 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have...").

Nonetheless, after careful review of the entire record and being mindful of both the deference due to the ALJ and the relatively low bar for finding an impairment to be severe, the Court finds that the ALJ's determination that Plaintiff's medically determinable physical impairments were not severe was supported by substantial evidence.  First, the ALJ acknowledged Plaintiff's "degenerative changes of the lumbar spine with arthropathy and radiculopathy" as reflected through Plaintiff's complaints of pain to medical providers and imaging confirming such conditions. (Tr. 1114). However, she also noted that, although he was prescribed medications, "he did not require emergency or intensive care for his spinal issues" and she concluded that these conditions were "mild." (Tr. 1114.) The medical examinations in the record, which largely show minimal or mild findings with respect to Plaintiff's lumbar condition, support the ALJ's finding. *See, e.g.* Tr. 62 (finding "[m]ild levocurvature," "[m]inimal chronic anterior wedging of the L1 vertebral body," "[m]inimal multilevel endplate spurring," and "[m]inimal degenerative changes"); 65 (finding "[n]ormal range of motion" and "[m]ild" tenderness to the left lumbar area); 68-69 (finding, alongside "[m]oderate subartiular stenosis," "[m]ild facet hypertrophy," "small" disc protrusion, "[m]inimal disc bulging," "[m]ild foraminal narrowing," and mild stenosis").

With respect to Plaintiff's left knee pain and left elbow pain, the Court also finds that substantial evidence supports the ALJ's failure to find these issues severe. More precisely, the ALJ did not address these physical issues—because they were not raised by Plaintiff. As mentioned above, Plaintiff neither mentioned these impairments as bases for disability in his applications nor at either of two hearings pertaining to the relevant period. (Tr. 633, 634, 447-65, 1130-55). Despite

11

any medical care related to Plaintiff's elbow or knee in the record, the ALJ was under no obligation to consider and address such issues without Plaintiff bringing them forward.

That said, for the reasons stated in the Commissioner's brief, the record does not support a finding that either Plaintiff's elbow or knee pain were "severe" under Step Two during the relevant period. First, the record shows that Plaintiff received treatment for his elbow pain between February 2020 and May 2020, suggesting that Plaintiff's elbow pain may not have satisfied the twelve-month duration requirement. 20 C.F.R. § 416.909. The medical records suggest that Plaintiff reported relief from his elbow pain as a result of Tramadol, and although Plaintiff highlights that an orthopedic surgeon ordered an EMG and referred him to physical therapy in May 2020, it is unclear in the record whether he actually underwent these treatments for his elbow. (Tr. 423, 57). *See Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996) (evidence that a condition improves with medication supports finding that the condition is not severe). Furthermore, while tenderness was displayed at his visits to the emergency department for his elbow pain, the medical findings also include normal range of motion, no swelling, intact sensation, and equal hand grips. (*See, e.g.,* Tr. 397).

Plaintiff's arguments pertaining to his left knee are similarly unavailing. Plaintiff suggests there are missing records of his knee treatment from March 2020 to April 2021, despite Plaintiff's attorney confirming in November 2023 that the record was complete and all records related to his case had been submitted. (Tr. 1444). However, the record supports the conclusion that Plaintiff's knee pain during the relevant period, if any, was not severe. First, at the most recent hearing, Plaintiff's representative identified February 2021 as "around the time the claimant had issues with his knees" and communicated that Plaintiff's mental conditions were primarily "the issue prior to 2021 that has affected his ability [to] work." (Tr. 1136). Second, Plaintiff's medical records date

12

diagnoses relating to Plaintiff's left knee to late January and early February 2021. (Tr. 1497). Third, when Plaintiff consulted an orthopedic surgeon in May 2020 for his left elbow, the examination notes do not mention Plaintiff also having pain in his left knee—either in Plaintiff's complaints or his listed diagnoses. (Tr. 57). Further, during a March 2020 visit to the emergency department for pain in his left elbow, Plaintiff denied having any other symptoms. (Tr. 415).

For all of the above reasons, the Court finds substantial evidence to support the ALJ's finding that Plaintiff did not have severe physical impairments during the relevant period.

### C.  RFC

Plaintiff's second argument is that the RFC is not supported by substantial evidence. He argues that the ALJ improperly based the RFC on the opinion of a non-examining state agency consultant and the ALJ's own inferences from the medical records instead of on the opinions of treating or examining sources.

A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945. The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015))."[T]he RFC determination is a 'medical question' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). However, "the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper*, 964 F.3d at 744 (citing *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)).

13

After careful review of the record, the Court finds that the ALJ's RFC assessment was supported by substantial evidence. As a preliminary matter, the Court notes that the ALJ included several significant mental limitations in the RFC. It appears that the ALJ accommodated (at least in part) Plaintiff's difficulty concentrating, persisting, and maintaining pace by limiting him to simple, routine tasks, not at a production rate pace, in an environment with few changes in setting or duties. She also accommodated his difficulties in interacting with others by limiting him to occasional contact with supervisors, coworkers, and the general public.  To the extent that the ALJ did not find Plaintiff's impairments would impose additional mental limitations, that conclusion was supported by substantial evidence, including medical evidence.

First, the ALJ reasonably considered the mental status examinations in the record, which generally showed that although Plaintiff was often anxious and sometimes depressed or irritable, he was almost always cooperative, made average eye contact, and had a normal appearance, a full or appropriate affect, logical and goal-directed thought processes, normal cognition, and intact memory. (Tr. 1118). The ALJ also correctly noted that although the medical records contained some abnormalities, the majority of items were routinely unremarkable. (Tr. 1118). The ALJ reasonably found the relatively normal objective findings undermined Plaintiff's allegations that he had symptoms so severe that he would be incapable even of the limited range of work set forth in the RFC. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010) (finding that the ALJ reasonably discounted allegations of disability based in part on unremarkable examination findings).

Second, the ALJ reasonably considered that Plaintiff's complaints to his health care providers did not reflect the level of symptoms he indicated in his testimony. (Tr. 1118). The ALJ noticed that, absent some abnormalities on few occasions, Plaintiff's own reports to his treaters

14

were generally unremarkable, such as "doing pretty good," his "moods have been pretty good," his "depression is okay and pretty stable," and his anxiety was "getting better as well." (Tr. 1118). Plaintiff generally reported mild, if any, symptoms, and satisfaction with the aid of medication. *See, e.g.* Tr. 892 ("[H]e says he does well with his medications" and that he "is having a little depression here and there but it[']s not out of control" and his "anxiety is there but is manageable"); Tr. 902 (Plaintiff said "I'm doing great."); Tr. 2710 (noting Plaintiff is "not really having any depression, and only mild anxiety. No panic attacks. He said his sleep is good and appetite is good" and that there were no hallucinations); Tr. 37 (noting Plaintiff is "doing well with his medication" and "he is not having depression but has some irritability" and he has "[n]o hallucinations" and "[d]enies any mania"). To the extent that Plaintiff's condition was controlled by medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).

Third, the ALJ reasonably considered that Plaintiff's reported daily activities were inconsistent with a more restrictive mental RFC. The ALJ noted that despite Plaintiff's report that during the relevant period he had concentration issues, trouble getting along with others, and often experienced paranoia, hallucinations, and mania such that he would have been unable to work, he described daily activities and exhibited behavior that were "inconsistent with his allegations of completely disabling symptoms and limitations." (Tr. 1117-18).  The ALJ pointed to Plaintiff's reports that he worked out at the gym twice a week, went grocery shopping, regularly attended AA meetings, cleaned his home, paid bills, and cared for a dog and his young son. (*Id.*); *see also, e.g.,* Tr. 654-59, 899, 925, 928.

15

Accordingly, the ALJ did not rely solely on the state agency consultants' opinions or the objective findings in reaching the RFC determination, but properly considered that evidence along with the rest of the evidence in the record, including Plaintiff's reports to his treaters, his treaters' observations, and his own testimony about his limitations. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the non-examining physician] along with the medical evidence as a whole."); *see also Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016); 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence...is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Furthermore, the ALJ was not required to rely on a particular medical opinion in making the RFC assessment. *See Hensley*, 829 F.3d at 932 ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion.") (citation and quotation marks omitted); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.") (quotation marks omitted).

Plaintiff also states that the ALJ went "beyond [her] expertise" in forming her opinions regarding residual functional capacity, and he suggests that the ALJ in this case improperly made her own independent medical findings or drew inferences from medical reports. The Court disagrees. "It is the ALJ's responsibility to determine [a claimant's] RFC based on all the relevant evidence." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted). It was entirely appropriate for the ALJ to discuss and evaluate the objective medical

16

evidence in the medical records in determining Plaintiff's RFC. *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Moreover, as explained above, the ALJ did not rely solely on her own evaluation of the objective medical evidence but also on opinion evidence, Plaintiffs' treaters' notes with regard to her condition, and Plaintiff's own testimony. Here, although the RFC may not have mirrored any of the particular opinions in the record, the record contained opinion evidence regarding Plaintiff's ability to function from multiple sources. The ALJ properly determined Plaintiff's RFC based on all of the evidence.

To the extent that the record may contain conflicting evidence related to the severity of Plaintiff's physical impairments and Plaintiff's RFC, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## VI.  CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2025.